UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| Maynor Antonio Ramirez Valverde,<br><br>        Petitioner,<br><br>  v.<br><br>Sam Olson, Field Office Director of Enforcement and Removal Operations, Chicago Field Office, Immigration and Customs Enforcement; Kristi NOEM, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; Pamela BONDI, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; Scott Smith, Jail Administrator of Dodge County Jail,<br><br>        Respondents. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

# INTRODUCTION

1. Petitioner Maynor Antonio Ramirez Valverde is in the physical custody of Respondents at the Dodge County Jail in Juneau, Wisconsin. He faces years of unlawful detention because the Department of Homeland Security (DHS) and the Executive Office for Immigration Review ("Immigration Court") of the Department of Justice (DOJ) have erroneously concluded Petitioner is subject to mandatory detention.

2. Petitioner is charged with, inter alia, having entered the United States without inspection. 8 U.S.C. § 1182(a)(6)(A)(i).

3. Prior to July 8, 2025, individuals like Petitioner, charged with entering the United States without inspection, would receive a bond hearing at which an immigration judge would determine whether they could be released on bond pending their immigration hearing.

4. On July 8, 2025, DHS issued a new policy instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without inspection—to be an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) and therefore subject to mandatory detention.

5. Because of this new policy, DHS denied Petitioner release from immigration custody—meaning he will be detained until his final immigration hearing, something that could take years to occur.

6. Any request by Petitioner for bond redetermination before Immigration Court would be futile. DHS's policy states that it was developed "in coordination with the Department of Justice," and in a recent published decision by the Board of Immigration Appeals (BIA), *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), Respondent Immigration Court

adopted the same position as DHS, classifying noncitizens like Petitioner as applicants for admission and statutorily ineligible for bond under § 1225(b)(2)(A).

7. By detaining Petitioner on this basis, Respondents are violating the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

8. Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

9. Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be released unless Respondents provide a bond hearing under § 1226(a) within fourteen days.

## JURISDICTION

10. Petitioner is in the physical custody of Respondents. Petitioner is detained at the Dodge County Jail, 216 W. Center St., Juneau, Wisconsin 53039.

11. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

12. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

13. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Eastern District of Wisconsin, the judicial district in which Petitioner currently is detained.

14. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Wisconsin.

## REQUIREMENTS OF 28 U.S.C. § 2243

15. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

16. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

17. Petitioner Maynor Antonio Ramirez Valverde is a citizen of Nicaragua who has been in immigration detention since September 5, 2025. After arresting Petitioner in Sun Prairie,

Wisconsin, ICE did not set bond and Petitioner requested review of his custody by an immigration judge. Petitioner has resided in the United States since 2022.

18. Respondent Sam Olson is the Director of the Chicago Field Office of ICE's Enforcement and Removal Operations division. As such, Sam Olson is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

19. Respondent Kristi Noem is the Secretary of the Department of Homeland Security. She is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner and is sued in her official capacity.

20. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

21. Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. She is sued in her official capacity.

22. Respondent Immigration Court is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

23. Upon information and belief Respondent Scott Smith is employed by Dodge County, Wisconsin. Respondent Smith is Jail Administrator of the Dodge County Jail, where

Petitioner is detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

## LEGAL FRAMEWORK

24. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

25. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an immigration judge. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

26. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

27. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

28. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

29. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

30. Following the enactment of the IIRIRA, Immigration Court drafted new regulations explaining that, in general, people who entered the country without inspection were

not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

31. Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an immigration judge or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

32. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

33. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered the United States without inspection shall now be deemed "applicants for admission" under 8 U.S.C. § 1225, and therefore are subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

34. On September 5, 2025, the Board of Immigration Appeals (BIA) issued a published decision adopting this same position. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). That decision holds that all noncitizens who entered the United States without

---

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

admission or parole are considered applicants for admission and are ineligible for immigration judge bond hearings.

35. ICE and Immigration Court have adopted this position even though numerous federal courts have rejected this exact conclusion. For example, after immigration judges in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, --- F. Supp. 3d --- 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025); *see also Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025) (granting habeas petition based on same conclusion).

36. No federal court that has considered Respondents' new interpretation of the INA, since ICE implemented its July 8, 2025 memo, has accepted this new interpretation. *See Martinez v. Hyde*, CV 25-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Garcia Jimenez v. Kramer*, No. 4:25-cv-03162-JFB-RCC, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Aguilar Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v Noem*, 5:25-cv-01789-ODW-DFM, 2025 WL 2379285 (C.D. CA Aug 15, 2025); *Jacinto v. Trump, et al.*, 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 (D. Neb. August 19, 2025); *Leal-Hernandez v. Noem*, 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Minn. Aug. 24, 2025); *Herrera Torralba v. Knight*, 2:25-cv-03166-RFB-DJA, 2025 WL 2581792 (D. Nev. Sep. 5, 2025). Courts have rejected the BIA's interpretation of the INA in *Matter of Yajure Hurtado* for the same reasons. *See, e.g., Pizarro Reyes v. Raycraft*, 2025 WL

2609425, at *6-8 (E.D. Mich. Sept. 9, 2025) (disagreeing with BIA's analysis and according no deference under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024)); *Sampiao v. Hyde*, 2025 WL 2607924, at *8 n.11 (D. Mass. Sept. 9, 2025) (same).

37. DHS's and DOJ's interpretation defies the INA. As the *Rodriguez Vazquez* court explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

38. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

39. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies. *Rodriguez Vazquez*, 2025 WL 1193850, at *12 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)).

40. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

41. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme

applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

42. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

## FACTS

43. Petitioner has resided in the United States since 2022. He lives in Sun Prairie, Wisconsin with his partner, who is a United States citizen, and other roommates.

44. On September 5, 2025, Petitioner was arrested in the early morning hours outside his residence as he was returning home from work. Unknown to Mr. Valverde, that morning ICE was conducting an operation to apprehend one of Mr. Valverde's roommates. During the course of the ICE operation to apprehend his roommate, Mr. Valverde was also detained by ICE as a collateral arrest. Mr. Valverde avers that ICE deportation officers informed him during his arrest that he was not an intended original target of their enforcement action that day. Petitioner is now detained at the Dodge County Jail in Juneau, Wisconsin.

45. DHS placed Petitioner in removal proceedings before the Chicago Immigration Court pursuant to 8 U.S.C. § 1229a. ICE has charged Petitioner with, *inter alia*, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. (Declaration of Laura Graham ("Graham Decl."), Exhibit 1.) The warrant for Petitioner's arrest issued by DHS on September 5, 2025, indicated that DHS was exercising its detention authority pursuant to section 236 of the Immigration and Nationality Act (8 U.S.C.

§ 1226). (Graham Decl., Exhibit 2.) The DHS warrant for arrest does not reference section 235 of the Immigration and Nationality Act (8 U.S.C. § 1225). (*Id.*)

46. Mr. Valverde avers that he has no criminal history in the United States or in any other country. He has not even received a traffic ticket.

47. Before he was detained by ICE, Petitioner had a history of stable employment in the United States, most recently working on a dairy farm in Waunakee, Wisconsin, and previously in construction in the Madison area.

48. Petitioner has never missed a hearing in immigration court. He has two viable forms of relief from removal in immigration court that he intends to pursue with the assistance of pro bono counsel. First, Petitioner intends to seek relief in removal proceedings in the form of Asylum under 8 U.S.C. § 1158 and in the alternative Withholding of Removal under 8 U.S.C. § 1231(b)(3) or Relief under the Convention Against Torture (CAT) under 8 CFR § 1208.16(c). To summarize his fear-based claim, Mr. Valverde was attacked and beaten by Nicaraguan security forces during the period of anti-government protests, and has a well-founded fear of persecution by the repressive Sandinista government if returned to Nicaragua.

49. Additionally, Petitioner intends to seek relief from removal via a petition for U nonimmigrant status pursuant to 8 CFR § 214.14 as he asserts that he was the victim of false imprisonment and domestic violence by a former partner who coerced him over a period of nine months when he first arrived in the United States, suffered mental and physical abuse as a result of his ex-partner's mistreatment, and was helpful to law enforcement in the investigation of criminal activity. Petitioner is neither a flight risk nor a danger to the community.

50. Following Petitioner's arrest and transfer to Dodge County Jail in Wisconsin, ICE issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be released on other conditions.

51. Any request for bond redetermination before Immigration Court is futile, as the BIA recently held in a published decision that persons like Petitioner are subject to mandatory detention as applicants for admission under § 1225(b)(2)(A). *See Mosqueda v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025) (noting that BIA's decision in *Yajure Hurtado* renders prudential exhaustion futile).

52. As a result, Petitioner remains in mandatory detention. Absent relief from this Court, he faces the prospect of months, or even years, in immigration custody, separated from his U.S. citizen partner with whom he lives and community without ever receiving an individualized hearing justifying his detention in violation of the INA and Due Process.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of the INA

53. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

54. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

55. The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

## COUNT II

## Violation of Due Process

56. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

57. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

58. Petitioner has a fundamental interest in liberty and being free from official restraint.

59. The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Issue a writ of habeas corpus requiring that Respondents release Petitioner or provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within 14 days;

c. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

d. Grant any other and further relief that this Court deems just and proper.

Signed this 29th day of September, 2025.

        QUARLES & BRADY LLP

        *s/Kevin Long*
        _____
        Kevin Long
        Kevin.Long@quarles.com
        Michael Ashton
        Michael.Ashton@quarles.com
        411 E. Wisconsin Ave., Suite 2400
        Milwaukee, WI 53202
        (414) 277-5000

        Emily M. Feinstein
        Emily.Feinstein@quarles.com
        33 E. Main Street, Suite 900
        Madison, WI 53703
        (608) 251-5000

        *Attorneys for Petitioner*

**Petition Verification**

I, the undersigned, hereby declare under penalty of perjury that the foregoing information is true and correct.

Signed, this 29th day of September, 2025.

        *s/ Laura Graham*
        Laura Graham